Arnold L. Fein, J.
In this article 78 proceeding petitioners, residents and parents of children who attend schools within School District One, seek review of the determination of respondent, Community School Board of District One, regarding the employment of respondent, Carl Erdberg, as District Superintendent of School District Number One and an order annulling such action and granting related relief. Respondents cross-move to dismiss the petition.
On August 26, 1970, respondent Community School Board resolved, after a public meeting, to hire Erdberg, the then Acting District Superintendent, as District Superintendent for School District Number One for a period of two years. Petitioners contend that the selection of Erdberg as District Superintendent was improper because the board did not consult with parent associations and other community groups and that respondent board failed to follow published criteria incorporated in section 2590-e of the Education Law and the decentralization resolutions of the Board of Education, allegedly in effect at the time the board made its selection.
Petitioners rely upon a resolution promulgated by the Board of Education on September 4 and 11, 1968, entitled “ Selection of Local (District) Superintendents and Unit Administrators For Period Ending June 30, 1969 ”. This resolution in substance required local school boards to consult with parent and community groups as to the criteria for selecting a District Superintendent. It is not disputed that this resolution by its own terms was effective only until June 30, 1969. However, *1008 petitioners contend that this resolution was extended to cover the academic year 1969-1970, relying on action of the Board of Education, variously described as a resolution and as a letter from the Superintendent of Schools of the- City of New York, dated June 2, 1969, directed to local school boards. Although both sides argue its significance, citing Stern v. Cangiano (N. Y. L. J., Dec. 24, 1969, p. 12, col. 3) neither has seen fit to submit a copy of the latter letter or resolution.
In Stern, the court quoted a letter from the Superintendent of 'Schools, dated June 2,1969, addressed to the District Superintendents and Chairmen of local school boards:
“ Legislation passed this year gives Local School Boards the right to elect and re-elect district superintendents for a one year contract period ending June 30, 1970.
“ Such elections are to be conducted under the same regulations as pertain to the elections for the current year. A copy of these regulations is attached.”
It is assumed that this is the document referred to by the parties. It is manifest that it specifically refers to election of District Superintendents for the school year ending June 30, 1970. The election here under dispute took place on August 26, 1970, for the school year ending June 30, 1971, obviously not covered by the Superintendent’s letter. No evidence has been submitted of any action purporting to extend the regulation to cover the school year ending June 30,1971. Petitioners’ reliance upon either the resolution or letter is therefore misplaced.
Chapter 568 of the Laws of 1968 and subsequent amendments established decentralization of New York City school districts. This act, effective in June, 1968, made provision for the selection of District Superintendents by local shod boards, in subdivision 4 of section 2564 of the Education Law: “4. In accordance with rules and regulations to be promulgated by the board of education each such local school board shall have the power to employ a local superintendent of schools upon such terms and conditions as such local school board shall determine ”.
This is the foundation for the regulations on which petitioners rely. However, section 6 of chapter 568 limited the contract period for which the then local boards could hire District Superintendents by providing that no contract could be entered into, pursuant to subdivision 4 of section 2564 of the Education Law, which expired later than June 30, 1969. Accordingly, as has been noted, the Board of Education regulations were expressly limited to that period.
In 1969, in furtherance of the decentralization plan for New York City schools, the Legislature enacted article 52-A of the *1009 Education Law (L. 1969, chs. 330, 422). Section 2590-e, the portion of this article providing for the employment of District Superintendents by local school boards, became effective July 1, 1970. All prior provisions relating to the employment of District Superintendents were clearly intended to cover the transitional period between the enactment of the first decentralization plan and the ultimate plan adopted by the Legislature, in chapter 330 of the Laws of 1969. This is further evidenced by section 6 of chapter 422 of the Laws of 1969, which amended subdivision 4 of section 2564 of the Education Law to provide that the then existing local school boards could not contract to hire a District Superintendent beyond June 30,1970. This is obviously the basis for Superintendent Donovan’s letter of June 2, 1969, covering the selection of District Superintendents for the school year ending June 30, 1970.
Section 2590-e of article 52-A of the Education Law is entitled “ Powers and duties of community boards ”. Paragraph a of subdivision 1 thereof specifically grants to local community boards the power and duty to: “ Employ a community superintendent ” subject only to the minimum education and experience requirements to be promulgated by the Chancellor, pursuant to section 2590-j. No other limitation or precondition is imposed upon the board. It is not within the province of the court to add to express statutory requirements. A court may not insert qualifying clauses in a statute or add conditions not contained therein. Legislative intent is to be determined primarily from the language used in the act under consideration (Department of Welfare of City of N. Y. v. Siebel, 6 N Y 2d 536, 543). The court may not impute to the Legislature an intent other than that warranted by the language of the legislation (Waterloo Woolen Mfg. Co. v. Shanahan, 128 N. Y. 345). It may be that the Legislature considered that the newly elected community boards should and could work out their own procedures, which this board apparently tried to do.
The court cannot read into the specific statutory delegation of powers to local boards that they are required to consult with community groups before selecting a District Superintendent. However, it is noted from the petition to the Chancellor for the City School District of New York, a copy of which was submitted to the court sometime after argument of the motion, that the Community Superintendent was selected after a public meeting on notice, at which many parents spoke. In the face of the specific provisions in the legislation covering the school years, 1968-1969 and 1969-1970, not included in the legislation for the period beginning July 1, 1970, the effective date of the current *1010 statute, it may not be inferred that the Legislature intended to carry forward these omitted specific requirements.
Although this determination makes it unnecessary to consider respondents’ further contention that petitioners have failed to exhaust their administrative remedies, the court has now been advised that petitioners have sought to obtain administrative review by their petition to the Chancellor, filed after instituting this proceeding. The Chancellor quite properly refused to take jurisdiction while “ this proceeding continues before the Court.”
The court concurs in the view expressed in Stem (N. Y. L. J., Dec. 24,1969, p. 12, col. 3, supra) that ‘ ‘ an internal review procedure of grievances such as this is vitally needed ” (Education Law, § 2590-g, subd. 10; § 25904), requiring “ adoption and implementation by the Board of Education ” or the Chancellor (Education Law, § 25904, subd. 1). Resolution of these matters within the educational administrative structure is far more appropriate than the limited judicial review permissible. Educational policy and procedúre is hardly a matter for court determination, except in rare instances.
The obvious purpose to decentralize the school system and to insure community participation should not be mired in the narrow areas available on judicial .review.
Accordingly, petitioners’ application is denied and respondents-’ cross motion to dismiss is granted, without prejudice to such administrative remedies as petitioners may be advised to pursue.