Samuel J. Silverman, J.
This is an article 78 proceeding by Community School Board 3 of the City of New York against the Board of Education of the City of New York and the Chancellor of the Board of Education, basically to enjoin the board from promulgating or enforcing any rules concerning the “excessing” of personnel employed in Community School District 3.
Community School Board 3 is a community school board created pursuant to article 52-A of the Education Law, the decentralization statute. As a result of budgetary stringencies, it has become necessary to reduce teaching and, apparently, supervisory staff in various schools in the city, including the schools of District 3; i.e,, to “ excess ” such personnel, in the jargon of teachers’ civil service. Apparently, there is no dispute with respect to teachers who have permanent tenure. *67 However, petitioner Community School Board 3 wishes to treat substitute teachers who have not been regularly appointed on a parity with regularly appointed teachers who are still serving their probationary period and who, thus, do not have tenure. Within these two groups, petitioner proposes to select who shall go and who shall stay on the basis of ‘ ‘ educational criteria ’ ’; i.e., an individualized judgment as to each teacher, based on the local board’s and community superintendent’s judgment of that teacher’s usefulness and the needs of the school, and not based on any previously announced objective standard or order of priority. Respondent Chancellor and, perhaps, respondent City Board of Education have issued guidelines requiring that substitute teachers shall be laid off first and then probationary teachers in inverse order of seniority, and that such seniority be determined on a citywide basis, with the possibility that regularly appointed probationary teachers laid off in a different district may be assigned to positions now held by substitute teachers in petitioner’s district.
The statute grants community school boards, with respect to the schools under their control, all the powers and duties of the former local .school board districts and the board of education of the city district “ not inconsistent with # * * the policies established by the city board” (Education Law, § 2590-e). With respect to the problems of excessing and tenure, and particularly whether a probationer laid off in one Community School District shall displace a substitute in another district and consequently, the question of the order in which and freedom with which a Community District can lay off probationers rather than .substitutes, a strong argument can be made that these are problems that affect more than one community school district and thus must be made subject to centrally determined citywide policies to be established by the City Board of Education (see Kryger v. Board of Educ., 37 A D 2d 622). On the other hand, the Community Superintendent makes a strong plea that the rigid implementation of the Chancellor’s guidelines may wreck some very important special educational programs in the community district’s schools.
In the circumstances, I think the dispute should be decided, at least in the first instance — and hopefully finally — within the educational system, by the State Commissioner of Education (with or without an intermediate determination by the City Board of Education), rather than by the courts.
Courts have traditionally refused to interfere with administrative action where the petitioner has not exhausted his administrative remedies, and where there is an adequate *68 administrative remedy (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 7801.07, 7801.09). In the present case, the broadest possible appeal is available within the educational system. Section 310 of the Education Law provides for an appeal to the State Commissioner of Education by “ Any person conceiving himself aggrieved ”, “in consequence of any action ”:
‘ ‘ 4. By the trustees of any district in paying or refusing to pay any teacher * * * or on any other matter upon which they may or do officially act.
“ 7. By any other official act or decision of any officer, school authorities, or meetings concerning any other matter under this chapter, or any other act pertaining to common schools.”
The statute declares that the decision of the State Commissioner of Education on such an appeal “ shall be final and conclusive, and not subject to question or review in any place or court whatever ”. Of course, this has still been held to permit review of purely arbitrary action (Matter of Board of Educ. v. Allen, 6 N Y 2d 127, 136).
The Corporation Counsel has suggested that, in the first instance, petitioner should appeal from the Chancellor’s action to the City Board of Education in accordance with the provisions of subdivision 2 of section 2590-1 and of subdivision 10 of section 2590-g of the Education Law.- If the complained of action is by the Chancellor and not the Board of Education, this suggestion makes sense. If, however, as petitioner contends, the action in substance, if not in form, is that of the City Board of Education, then, of course, that hoard should not pass on an appeal from its own actions, but the appeal should go directly to the State Commissioner of Education.
In Matter of Board of Educ. v. Allen (6 N Y 2d 127, 135-136, supra), the Court of Appeals said: “ This court has said that the object of section 310 of the Education Law ‘ is to make all matters pertaining to the general school -system of the state within the authority and control of the department of education and to remove the same so far as practicable and possible from controversies in the courts ’ (Bulloch v. Cooley, 225 N.Y. 566, 576-577; emphasis supplied). The comment has also been made that ‘ Such a policy assures determinations by a person conversant with school problems ’ ”.
Again, in Valdivieso v. Community School Bd. (67 Misc 2d 1007), Mr. Justice Fein said:
“ Resolution of these matters within the educational administrative structure is far more appropriate than the limited judicial review permissible. Educational policy and procedure *69 is hardly a matter for court determination, except in rare instances.
“ The obvious purpose to decentralize the school system and to insure community partcipation should not be mired in the narrow areas available on judicial review.”
These considerations are particularly applicable here. The parties to this case are not private parties. (Although two labor unions and two members of one union have intervened as parties respondent, they seek no affirmative relief.) The parties here are public agencies. Their rights are different from those of private parties. (Matter of Ocean Hill-Brownsville Governing Bd. v. Board of Educ., 23 N Y 2d 483, 487.)
More importantly, they are not warring principalities; they are two branches of the State education system — public agencies who should be engaged co-operatively in the effort to carry out the State’s constitutional commitment to “ the maintenance and support of a system of free common schools, wherein all the children of this state may be educated ” (N. Y. Const., art. XI, § 1). They are both subject to the State Department of Education, whose constitutional chief administrative officer is the Commissioner of Education (N. Y. Const., art. V, § 4). That “ department is charged with the general management and supervision of all public schools and all of the educational work of the state ” (Education Law, § 101).
The questions involved in this lawsuit are complex and delicate, involving not merely pure questions of law and statutory interpretation, but questions of educational policy and administration and civil service policy and administration, on all of which the Commissioner of Education can make a better informed and more flexible judgment than the courts. Among the problems involved in this case (in no special order) are these:
The effect of the application of the Chancellor’s guidelines on the special educational programs in Community School District 3;
The question whether it is possible, desirable or legal to have different rules for £< excessing ” personnel in different districts of the city; whether there should be one citywide seniority and tenure system or whether each local board should be permitted to have its own system. Apparently, 30 of the 31 local community boards have followed the central board’s guidelines;
The proper division of functions between the local boards and the City Board of Education.
*70 If the rules as to excessing are not fixed by statute, whether this is a problem that requires a consistent citywide policy (cf. Kryger v. Board of Educ., 37 A D 2d 622) ;
The “ greater-includes-the lesser” argument: As the services of probationary employees “ may be discontinued at any time during such probationary period ” (Education Law, § 2573, subd. 1) on the mere recommendation of a school superintendent and a majority vote of a board of education, does that include the power to lay probationers off in the same way, without following any objective priorities announced in advance (cf. Bailey v. McDougall, 66 Misc 2d 161);
Whether the order of 1 ‘ excessing ’ ’ as between probationary employees and substitutes is discretionary, and if so, who has the discretion;
What are the appropriate procedures of the City Board of Education and have they been complied with;
Whether there is any substance to the charges and countercharges of racial discrimination.
The fact that questions of law or statutory construction are involved does not preclude the Commissioner of Education’s jurisdiction (Matter of Levitch v. Board of Educ., 243 N. Y. 373, 375). Even as to such matters, particularly in the area of education law and practice, the Commissioner’s informed judgment is valuable (People ex rel. Bd. of Educ. v. Finley, 211 N. Y. 51, 59). In the case before us, it cannot be said that the statutes are even clouded-crystal clear. The authorities are, at best, inconclusive and divergent (see, e.g., Bailey v. McDougall, supra; Matter of Potter, 50 N. Y. State Dept. Rep. 353; cf. Matter of Lee v. Board of Educ., 182 Misc. 1011, affd. 269 App. Div. 747, affd. 295 N. Y. 647; Koso v. Greene, 260 N. Y. 491, 495). In the present case, the statute which seems to be most apposite is subdivisions 3 and 4 of section 2585 of the Education Law. Subdivision 3 provides: “3. Whenever a board of education abolishes a position under this chapter, the services of the teacher having the least seniority in the system within the tenure of the position abolished shall be discontinued.”
Obviously, the present case presents the question whether a regularly appointed teacher who is still in the probationary period and has no tenure can be said to be “ within the tenure of the position abolished ”. But, the Commissioner of Education has stated: “ 1 Within the tenure of the position abolished ’ has a specific and technical meaning as used in this statute. * * * As was said in the Matter of King, 49 State Dept. *71 Rep. 388, teachers secure tenure in the particular classification to which they are appointed, for instance, as an elementary teacher, high school teacher, assistant to principal, principal, etc. * * # The foregoing phrase had no reference to the date upon which the particular teacher secured tenure. The Legislature was merely attempting to classify the field of the position abolished, having in mind the various classifications of the tenure field which had been recognized throughout the state since the enactment of the tenure law. ’ ’ (Matter of Ducey, 65 N. Y. State Dept. Rep. 65-66.)
Where, as here, the language of the statute does not unambiguously compel a particular result, the correct resolution must depend as much on questions of policy as on the dissection of the language used.
All of the questions involved in this case are questions which the Commissioner of Education can pass upon in a more informed manner than the courts. Furthermore, while the courts can only review the questions of law or arbitrariness, the Commissioner of Education may review questions of discretion and policy. He has “ over-all plenary power ” (Matter of Ocean Hill-Brownsville Governing Bd. v. Board of Educ., 23 N Y 2d 485, 488, supra). “ Unlike the courts, the Commissioner is empowered to substitute his judgment for that of the officer whose action he is reviewing. This is the plain import of section 310 ” (Matter of Board of Educ. v. Allen, 6 N Y 2d 127, 141, supra). Thus, if the courts should ultimately have to act, they will have before them the discretionary decision of the ultimate repository of discretion in the educational system.
There is, of course, a substantial body of authority giving persons aggrieved their choice as to whether they wish to pursue their remedy in the courts immediately or follow the course of internal appeals within the educational system (See, e.g., Cottrell v. Board of Educ., 181 Misc. 645, 650, affd. 267 App. Div. 817, affd. 293 N. Y. 792). But, for the most part, these cases have involved litigations by private parties seeking to vindicate their private rights, and where essentially pure questions of law or statutory interpretations were involved and it appeared that the school official has acted in violation of an express statute (see, e.g., Matter of O’Connor v. Emerson, 196 App. Div. 807, 810, affd. 232 N. Y. 561; Bailey v. McDougall, 66 Misc 2d 161). But “there is an area where orderly, technically and professionally competent review of disputes by the Commissioner adequately protects those aggrieved. * * * To determine otherwise would result in judicial intrusion into an administrative area of specialization purposefully provided *72 by the Legislature.” (Matter of Levert v. Gavin, 39 Misc 2d 569, 571.)
Here, the case, by petitioner’s own submission, involves not just questions of statutory interpretation, but educational policy. More important, where as here, the dispute is between two public agencies, both dedicated to the education of the children of the city, there is greater likelihood of co-operative and mutually supportive educational efforts if the parties are required, at least in the first instance, to resolve their differences within the educational system by decision of the administrative head of the State’s educational system.
Accordingly, the petition is dismissed, without prejudice to any application that petitioner may make by appeal to the Commissioner of Education (or the City Board of Education).
The temporary restraining order heretofore granted is continued until midnight Friday, November 19, 1971.