Max Bloom, J.
Petitioner (District 3), by this proceeding seeks to restrain the Board of Education of the City of New York and its 'Chancellor (collectively, the Board) from interfering with its budgeting of moneys allocated to it, and for sundry other relief.
The petition sets forth five separate claims. It charges the Board with: (1) failure to allocate funds for five .separate programs included in the 1971-1972 education budget; (2) interference with the transfer of funds allocated for per diem substitute teacher services (referred to in the specialized ‘ ‘ language ” employed by the educational system as Module 4) to instructional services in classroom (Module 2); (3) arbitrary and capricious conduct in refusing to allow District 3 “maximum flexibility” in adjusting to budget cuts contained in the current budget; (4) arbitrary and capricious conduct in failing to comply with procedures mandated by law; and (5) arbitrary and capricious conduct, in that the failure of the Board to *827 allocate funds for specific purposes, the performance of which is alleged to be delegated to District No. 3 by law, has rendered it impossible for District No. 3 to comply with the obligations enjoined upon it.
While the third and fifth causes of action are merely repetitious of the second and fourth causes of action, it is obvious that the entire dispute finds origin in the refusal of the Board to permit District No. 3 to transfer the sum of $267,172 of the total amount allocated to that District for per diem substitute services to instructional services in the classroom.
Integral to a determination of the power of District No. 3 to transfer funds from one budgetary allocation to another is a consideration of the budgetary provisions of article 52-A of the Education Law. The section governing this issue (§ 2590-i) provides that community boards, after public hearings, shall submit estimates to the Chancellor (subd. 2) who shall prepare estimates ‘ 4 for adoption by the city board, after consultation with the community boards and after a public hearing ” (subd. 3). These estimates shall be submitted to the Mayor (subd. 4). Upon final adoption of the educational appropriation for the city district4 4 the city board through the chancellor shall allocate among the community boards the funds appropriated in the units of appropriation for the programs or activities of such boards on the basis of objective formulae established annually by the city board” (subd. 7, par. [a]). Within 30 days after the adoption of the budget 4 4 the chancellor shall transmit to each community board a statement enumerating the * * * funds which have been allocated thereunder to such community board for its programs ” (subd. 7, par. [b]). Simultaneously, the Chancellor is required to submit a statement allocating the funds to be expended by the city board for the programs to be administered by it (subd. 7, par. [c]). Subdivision 8 authorizes the city board to develop and implement procedures permitting modification of detailed schedules relating to appropriated funds allocated to community districts.
In the co-ordination draft of its business and administration circular No. 5, the Board emphasized (par. 1.1) that none of the funds made available for per diem substitutes and for other personnel replacements 44 are available for personnel costs other than absence coverage.” To meet with the obligation imposed by subdivision 8 of section 2590-i, it provided in the same circular (par. 3.4) that where community districts improved teacher attendance, 50% of the savings accruing during any quarter from the diminished use of per diem substitutes could be trans *828 lated into full time teaching positions for the next quarter. It is the position of District No. 3 that these limitations upon its right to transfer funds appropriated for a specified purpose to a different purpose is both ultra vires and arbitrary and capricious.
Were this question one of law only, it would be simple of determination. The budgetary process outlined in section 2590-i makes obvious that estimates originate- with the community school board. Necessarily, therefore, the amount ultimately allocated to District No. 3 for per diem substitutes had origin with an estimate submitted by District No. 3. Had District No. 3 indicated a lesser need for this type of teacher personnel it is plain that, in this era of budget stringency, a lesser amount would have been appropriated and allocated for that purpose. The Board, by honoring the request of District No. 3, and the Mayor and Board of Estimate, by translating it into an appropriation, concurred in the need therefor. Under these circumstances, for the Board to assert that the use of the moneys for the purpose for which they were appropriated and allocated is necessary to maintain the minimum educational standards and curriculum requirements of all schools and programs throughout the city district is neither beyond its powers nor arbitrary or capricious.
Any other conclusion would make a shambles of the entire budget making process. Planning of expenditures, establishment of priorities, and all other elements of fiscal thinking so essential to the proper functioning of governmental institutions would be destroyed with resultant financial chaos. The educational budget crisis during the 1970-71 period is a prime example of the result.
To say this, however, is not to dispose of issue here involved. Fine questions of educational and administrative policy intrude themselves, questions which involve all of the school districts in the city and not only the single district which is here present as the petitioner. Any determination will affect, necessarily, the education of all of the children in the city school system.
Historically, the courts have frowned upon the submission to them of matters dealing with the educational process (cf. Matter of Bennett, 3 Denio 175). The question here presented is one singularly appropriate for determiriation by the educational authorities (cf. Kryger v. Board of Education, 37 A D 2d 622). Inasmuch as administrative remedy is available (Education Law, §§ 310, 2590-g, subd. 10), interference by the court, absent the exhaustion of such remedy, is unwarranted (Comnwmty School Bd. 3 v. Board of Educ. of City of N. Y., 68 Misc 2d *829 66; Valdivieso v. Community School Bd., 67 Misc 2d 1007 ; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 7801.07, 7801.09).
So far as practicable, school problems should be removed from judicial determination (Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127; Community School Bd. 3 v. Board of Educ. of City of N. Y., 68 Misc 2d 66; Valdivieso v. Community School Bd., 67 Misc 2d 1007) and left, at least in the first instance, to those conversant with them. Despite the language of section 310, such determination will be subject to review by the courts if it is arbitrary (Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127; Matter of Levitch v. Board of Educ. of City of N. Y., 243 N. Y. 373).
Community School Bd., Dist. 3 v. Board of Educ. of City of N. Y. (66 Misc 2d 739) is not to the contrary. That case dealt with the distribution of Federal title I funds, over which the city board had no control. Its limited authority with respect thereto terminated when the Chancellor approved the form of the projected activity. Hence, the issue presented was one of law only and did not involve either educational policy or administration.
The fourth cause of action similarly presents a matter of educational policy. District 3 contends that the Board has failed to comply with the provisions of subdivision 8 of section 2590-i in that it has failed to develop and implement procedures for modification of detailed schedules. The Board contends that its business and administration circular No. 5 has done so. Whether the circular complies with the statute is a matter of administrative policy which should, in the first instance, be resolved through the appeals channels prescribed by the Education Law.
Thus, there is left for disposition only the first cause of action. Concededly, the Chancellor has allocated the moneys available to the community school districts for activities to be performed by the community school districts. Equally, it is conceded that he has not allocated the balance of the budget for the supportive services contained in Program 31, such as school lunch service, transportation of pupils, custodial and other services, repair and maintenance of school buildings, etc.
Not only does the attack on Program 31 pose serious administrative problems but, in addition, much of it lies in an area which was left gray by the Legislature. Thus, section 2590-e of the Education Law delegates to community school boards the powers and duties theretofore vested in ‘1 the local school board districts and the board of education of the city .district * * * *830 with respect to the control and operation of all pre-kindergarten, nursery, kindergarten, elementary, intermediate and junior high schools ” and specifically authorizes community school boards to 11 generally manage and operate the schools and other facilities under its jurisdiction ” and to “ operate cafeteria or restaurant services for pupils and teachers(Italics supplied.)
Whether this blanket transmission of power means what it says is open to question, however. Section 2590-g reserves certain limited powers to the city board and section 2590-h confers certain powers upon the Chancellor. Under subdivision 17 of section 2590-h, the Chancellor is invested with the powers set forth in section 2554, one of which (subd. 15, par. a) is “to authorize, or in [his] discretion to conduct, and maintain such extra classroom activities, including the operation of cafeterias or restaurcmt service for pupils and teachers ” (italics supplied). Thus, the same power is conferred both on the Chancellor and the community board.
Another of the powers vested in the Chancellor by section 2590-h and subdivision 19 of section 2554 is to provide “for the transportation * * * whenever * * * such transportation is required because of the remoteness of the school to the pupil However, section 2590-h (subd. 1, par. [d]), which empowers the Chancellor to control and operate city-wide programs also specifies ‘ ‘ that a community district may also operate within its district programs which also provide similar services Here, again, the language is susceptible of an interpretation which demonstrates conflict in the delegation of power.
It is plain, therefore, that whether these supportive services are appropriate to the city board or to the community board involves a question of proper administration of the school system. Accordingly, it should be left for determination, in the first instance, to those having special expertise in those areas.
The application is dismissed, without prejudice to such administrative action as District 3 may deem advisable.