John A. Monteleone, J.
Petitioner, Council of Supervisors and Administrators, ^eeks an order to enjoin the respondent city Board of Education from (1) enforcing excessing directions contained in a notice issued by the Executive Director of the Office of Personnel, (2) violating the Education Law, bylaws of the respondent, and provisions of the collective bargaining agreement, (3) permitting seniority to be disregarded, and (4) also directing respondent to correct the improper and unlawful acts in implementation of its excessing policy.
The main issue is whether the city Board of Education has the power to assign excessed supervisors and administrators from one community school district to another without the consent of the receiving district. The elements of the controvérsy are power and money.
Intervening Community School Boards Nos. 8, 13, and 31 contend that the city board lacks the power. They further argue that the city board does not even have the power to promulgate city-wide excessing rules binding upon community school districts. Petitioner, however, concedes that respondent does have the power to establish excessing rules but argues that the city board has not complied with its own excessing rules and with provisions of the collective bargaining agreement requiring consultation with the union.
A preliminary matter requires comment and disposition. An organization calling itself “ The New York City School Boards Association ” instituted a separate article 78 proceeding involving this controversy. That proceeding was dismissed on the ground that petitioner lacked standing but the court ruled that it would allow those individual community school boards who wished to do so to intervene in this proceeding. Three district boards have intervened and apparently 28 declined. The court wishes to make clear, contrary to paragraph 5 of the interveners ’ petition, that the association is not permitted to intervene in this proceeding. The court disapproves of the association’s attempt to circumvent its ruling and denies its request for relief.
On June 24, 1971 the Chancellor issued to community school boards and community superintendents rules concerning excessing, transfer, and layoff of pedagogical and nonpedagogical personnel. They were issued when it became apparent that *785 there would be a limitation of appropriated funds for the 1971-1972 school year. The rules, so far as pertinent, provide:
“ EXCESSING BULES TO BE APPLIED IN THE EVENT OF LAYOFF-SUPERVISORS
“ If a city-wide excess condition causes a layoff of staff in any licensed position, the provisions of Law will be followed to determine the staff member to be laid off, without fault and delinquency with the understanding that said member of staff is to be placed on a preferred list. Such excessed staff member shall be the last person appointed in the license on a city-wide basis.
“Rule 1. Within the school, district, bureau'or other organizational unit, the supervisor with the latest date of appointment within license will be the first to be excessed, irrespective of probationary or permanent license. A supervisor on probation should not be excessed more than once during his probationary period of service.”
In July, 1972 the budgetary allocation to each community school district was determined pursuant to formula prescribed by section 2590-i of the Education Law; and each community school board was informed of the amount of its budgetary allocation for the school year 1972-1973. By reason of the limited funds available to the entire school system and increased costs, the number of staff positions within the system was decreased by approximately 5%, making it necessary to excess supervisory and other personnel in the community school districts since no school district may exceed budgetary allocation. The affected community school boards notified the Office of Personnel they were declaring certain positions and incumbents in excess. After verifying that there were available neither budget lines nor substitutes, the Office of Personnel then determined which individuals in each license area had least seniority in accordance with the excessing rule and validated those individuals as excess personnel. After the validating process was completed, respondent city board assumed the payroll expenditures for the excessed personnel pending their assignment to an appropriate vacancy.
On October 16, 1972 the Office of Personnel issued a letter to. community school boards advising them of the availability of excessed personnel, reminding them of their obligation to hire such personnel, and requesting that they interview and employ the listed individuals in available positions. The response to the letter was insufficient. The method (interview and select) *786 did not succeed quickly enough to place excess personnel. Salaries of such personnel became an added financial burden to every central board and community activity. Accordingly, excess personnel in five license areas were assigned to community school districts on the basis of either vacancies in positions in the districts or to replace people holding positions on substitute licenses.
Community School Board No. 8 refused to accept two Assistant Principals transferred to its district on the grounds that it had only one vacancy, the purported transfer was ‘1 a violation of our board’s legal right to hire its supervisory staff,” and ‘ ‘ the imposition of personnel from other districts denies to applicants from our staff the incentive afforded by opportunity to apply for advancement.”
Community School Board No. 13 refused to accept transferred personnel on the ground that an Assistant Principal would have to be “ bumped.” Imposition of an outside Assistant Principal, it claimed, would subvert its own carefully developed procedures for selection of supervisory personnel. It would also lose its satisfactory Early Childhood Supervisor holding a permanent license for two years.
Community School Board No. 31 likewise refused to accept the transferred personnel. It claimed that it had no vacancies and the imposition of these people would violate its own procedures for appointment and compel removal of its own effective Early Childhood Supervisor.
The court is aware of the problems presented by excessing. The villain appears to be Mr. “Not Enough Money.” While the court is sympathetic, it must make a disposition based upon law.
In Community School Bd. No. 3 of City of N. Y. v. Board of Educ. of City of N. Y. (68 Misc 2d 66), the issue, arising out of an excessing problem, involved the validity of an excessing rule providing that substitute teachers be laid off first and then probationary teachers in inverse order of seniority and that such seniority be determined on a city-wide basis. The court posed a series of questions and concluded: “ the Commissioner Of Education can pass upon [them] in a more informed manner than the court ’ ’ (p. 71).
Pursuant to that suggestion, an appeal was taken to the Commissioner of Education. The Commissioner decided (Matter of Community School Bd. No. 3, 11 Ed. Dept. Rep. 154, No. 8397, Jan. 13, 1972), inter alia, as follows (the statutory citations are those of the Commissioner):
*787 1. The city Board of Education has authority to adopt a uniform excessing policy that is binding upon the community school boards (Education Law, § 2590-g). The powers granted to community school boards are limited to those “ not inconsistent with * * * the policies established by the city board ” (Education Law, § 2590-e).
2. The city Board of Education is for all purposes the public employer of all persons appointed or assigned by community school boards or the city board (Education Law, § 2590-g, subd. 5).
3. Community school boards must defer to the city board when uniformity of policy throughout the city school district is necessary.
4. Sound educational policy requires that the city board be authorized to establish uniform criteria for excessing of professional personnel. Different rules for excessing personnel in the various community school districts are neither desirable nor permissible.
5. Power granted to community school boards to appoint and assign employees (Education Law, § 2590-e) shall “ not [be] inconsistent with the provisions of this article [52-A] or any applicable collective negotiation agreement” (Education Law, § 2590-e, subd. 2). Excessing does not involve appointment but rather a surplus of personnel over the number of positions available.
6. The excessing rules adopted by the city board are consistent with sound educational policy.
Section 310 of the Education Law makes the decision of the Commissioner of Education on an appeal “ final and conclusive, and not subject to question or review in any place or court whatever. ’ ’ His decision is subject to review only if it be arbitrary '(Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127, 136). The record does not show that the decision of the Commissioner has been declared arbitrary.
This court agrees with the principles laid down by the Commissioner of Education in Matter of Community School Bd. No. 3 (supra). Arguments of the community school boards that excessing rules violate the provisions of article 52-A of the Education Law, -a city-wide interdistrict excessing rule is unauthorized by the Education Law, personnel have been assigned to districts in which there were no vacancies, and employees may not be transferred between community school districts without the consent of the affected boards, are without merit. The October 16, 1972 Office of Personnel letter gave community school *788 boards adequate opportunity to ascertain the suitability ofexcessed personnel who were to be transferred.
The court is compelled to reject arguments of community school boards that excessing rules compel them to make room for unknown employees and that present personnel would be replaced by those having no prior contact with the district. This is an unfortunate but legal consequence of excessing rules necessitated by budgetary constraints. The city board’s policy of implementing excessing rules by attrition was adequate during the first year but does not meet the situation now when a 5% budget cut is required. The statutory power of community school boards to appoint and assign must yield to the superior power of the city board in establishing a uniform policy for excessing of personnel.
The final argument of intervening school boards that the city board is without power to direct that salaries of personnel transferred to districts shall be charged to the accounts of affected districts that have refused to accept them must also be rejected. The city board’s right to do so is implied from statutory, provisions that it is the public employer, empowered to allocate funds to each community school district, and from its power to establish a city-wide excessing policy.
Petitioner argues (a) respondent is not complying with excessing rules; (b) personnel have been sent “ excess ” notices without consultation with petitioner; (c) respondent has excessed personnel in a manner that cloaks invalid discontinuance of positions by community school boards; (d) no table of organization has been made available on a district basis; and (e) community school boards circumvent excessing rules by creating titles such as “coordinator” and “administrative assistant” and filling vacancies in available positions with people who have “ certificates of competency ” in violation of law.
Those charges are not supported by the record. The respondent, with its expertise in educational affairs, should inquire into those matters and establish the facts. The petitioner must first exhaust its administrative remedies before seeking relief from the court.
Petitioner has failed to show that violation of excessing rules has resulted in irreparable damage to its members. The power of the city board to manage and control education affairs (Education Law, § 2552) and to determine all policies of the city district (Education Law, § 2590-g) also includes the power to transfer supervisors from one district to another or to headquarters in implementation of a uniform city-wide excessing *789 policy. Transfer of a supervisor from a community school district to headquarters is not sufficiently harmful or prejudicial to compel judicial relief. If petitioner regards assignment to headquarters as a violation of working conditions, grievance provisions of its contract with the city board should be followed. There is no showing of injury since all supervisors are at present being paid and will continue on the payroll, except that six supervisors whose positions have been abolished will be reduced in salary and title.
It appears that of 52 affected supervisors, 17 were accepted by the districts to which they were transferred, 32 were not and are currently serving at central headquarters or in their original districts, 2 did not report for reassignment, and 1 remained in the original district. The rights of these supervisors and of the intervening school boards are to be determined in a manner consistent with this decision.
Accordingly, the stay granted to petitioner and intervenors is vacated, and the petition is dismissed.