OPINION OF THE COURT
Herbert A. Posner, J.
Plaintiffs have brought an action for a declaratory judgment *1011 declaring the defendant’s "Special Circular No. 37” invalid and unenforceable on the ground that it usurps the power of the community school boards to employ a community superintendent. (See, Education Law § 2590-e [1] [a].) The circular mandates the criteria and procedures to be followed by all community school boards in the hiring of community superintendents and requires the school boards to submit an evaluation report to the Chancellor for review, as to procedure, prior to the hiring of a new community superintendent or rehiring of an incumbent. Chancellor Fernandez contends that Circular 37 serves a dual purpose for it not only holds the community school boards accountable for the method used to select a superintendent (the top supervisory person in every community school district), but it also makes the community school boards take a "hard look” at how and who they are hiring.[1] This may be truly laudable, but does the circular exceed the Chancellor’s authority and, in effect, usurp the power of the school boards?
The court sympathizes with Chancellor Fernandez’s motives and appreciates his great success in streamlining and reorganizing the central bureaucracy, abolishing building tenure and establishing a training program for principals, eliminating the anachronistic Board of Examiners, and fighting to hold local school boards accountable for their actions. (See, NY Times Mag, June 17, 1990, at 58.) However, the law is bigger than any man and as praiseworthy as Circular 37 may be in its stated purpose, if the Chancellor has exceeded his statutory authority, the circular must be declared invalid. Unfortunately, that is the case, and for the reasons that follow, the plaintiffs’ request for a declaratory judgment is granted.
The Education Law gives each community school board the power and duty to: "Employ a community superintendent by contract for a term not to exceed by more than one year the term of office of the community school board authorizing such contract, subject to removal for cause, at a salary to be fixed *1012 within the budgetary allocation therefor, subject to the provisions of subdivision two of section twenty-five hundred ninety-j of this article.” (Education Law § 2590-e [1] [a].)
The primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature (McKinney’s Cons Laws of NY, Book 1, Statutes § 92). Where the language is clear and unambiguous, as in this case, neither the executive nor the judicial branch of government may read into the statute that which is not there. It is clear from the language of this statute, that the community school board has not only the power, but the obligation to employ a community superintendent.
The school board’s authority to appoint a superintendent, however, is subject to the provisions of the Education Law, which govern the appointment and removal of persons in the teaching and supervisory service. These provisions are found in section 2590-j, which states, in subdivision (2), that: "The chancellor shall promulgate minimum education and experience requirements for all teaching and supervisory service positions which shall not be less than minimum state requirements for certification, and with the approval of the city board shall create and abolish the titles of all positions in the teaching and supervisory service.” This clearly gives the Chancellor the power to promulgate education and experience requirements that are stricter than the minimum State requirements. Therefore, what the Chancellor has attempted to do in section III (A) and (B) of the circular could have been a legitimate extension of his power to set "minimum education and experience requirements”. Section III (C) of the circular provides for a written evaluation of a minimum of three candidates to be submitted to the Chancellor by the school board. This could also be a legitimate extension of the Chancellor’s authority if it was limited to the community school board providing him with a resumé of the education and experience of the candidate that they propose to hire for district superintendent. In its present form, it goes too far, as do the other sections of Circular 37 which mandate, rather than suggest, criteria to be employed by the school board and require review by the Chancellor of both the selection process and the evaluation of the candidates prior to the final selection of a superintendent. Therefore, the court finds that the circular usurps the community school board’s power and exceeds the authority given to the Chancellor by the Education Law.
*1013 In 1969, after a long and bitter fight between various political, economic and social factions in the City of New York, article 52-A of the Education Law was enacted by a divided Legislature.[2] As a result of this enactment, the New York City educational system was restructured into 32 distinct and separate community school districts for the purpose of giving "local groupings of citizens a greater voice in selecting educational personnel appropriate to such local citizenry.” (Matter of Duncan v Nyquist, 43 AD2d 630, 631.) By the creation of a two-tiered system of education with local elected community boards possessing certain powers, and a central Board of Education possessing other powers, it was hoped that the inertia and insensitivity to local community concerns, exhibited by an entrenched bureaucracy, and strong teachers’ union and supervisory associations, would be offset all for the benefit of the children. (Rogers & Chung, 110 Livingston Street, Revisited, at 11 [NY Univ Press 1983].) Unfortunately, this sharing of power had to inevitably lead to tension between a strong Chancellor (such as Mr. Fernandez) and the local community boards.
The Chancellor contends that promulgating procedures to guide community school boards in choosing their superintendents is a lawful exercise of his power to insure minimum educational standards system-wide. He cites as authority Matter of Council of Supervisors & Adm’rs of Pub. Schools of N. Y. City v Board of Educ. (73 Misc 2d 783 [Sup Ct, Kings County], affd 42 AD2d 930 [2d Dept 1973], affd 35 NY2d 861 [1974]), in which the Chancellor was held to have the authority to impose a policy regarding excess personnel system-wide. The main issue in the Council case was whether the city board had the authority to assign excessed supervisors and administrators from one community school district to another without receiving the district’s consent. The court in Council based its decision on the decision made on appeal by the Commissioner of Education in Matter of Community School Bd. No. 3 (11 Ed Dept Rep 154 [Jan. 13, 1972]). The main principles laid down by the Commissioner in that case are as follows:
1. Board of Education has authority to adopt uniform policy in layoff of personnel binding upon the school boards (Education Law § 2590-g).
*1014 2. City Board of Education is the public employer of all persons appointed or assigned by the community school board or city board and as such can set forth excessing policies. (Education Law § 2590-g [5].)
3. Excessing does not involve appointment, but rather a surplus of personnel over the number of positions available.
Since Council of Supervisors (supra) clearly states that excessing does not involve appointment (a power granted to the school boards by Education Law § 2590-e [2]), the Chancellor has erred in relying upon the Council case as authority for mandating how superintendents will be appointed through Circular 37. There is no question that the Chancellor has the authority by law to set minimum educational standards for the city (Education Law § 2590-h [8]), and more specifically, that he has the authority to set minimum education and experience requirements for eligibility for the position of district superintendent (Education Law § 2590-j [2]). However, this does not give him the authority to dictate to the local boards as to how they should go about screening and evaluating candidates for the position of superintendent. If a community school board hires a district superintendent whose experience and educational background do not meet the standards promulgated by the Chancellor, he does have a right to demand that the school board reject that person. That is as far as his authority goes in this area.
CONCLUSION
Petitioners’ application for a declaratory judgment is granted and Special Circular No. 37 is declared invalid, with the recommendation to the Chancellor that he revise it and limit it to the promulgation of educational and experience requirements for district superintendents; or, in the alternative, to persuade the Legislature to change the law.[3]

. I can especially appreciate the Chancellor’s motives, since I did the same thing in 1975 when I was Chairman of the New York State Assembly Committee on Environmental Conservation. As author of article 8 of the Environmental Conservation Law (State Environmental Quality Review Act [SEQRA]), my goal was to force all proposed new developments to take a "hard look” at how the project would affect our environment. As the Chancellor attempts to do in Circular 37, I set criteria procedures that had to be followed before a permit could be issued by a municipal or State agency. The difference between Circular 37 and SEQRA is the fact that one is a law and the other is an executive order.

. There were many of us in the 1969 Legislature who had serious doubts that this division of power between a central bureaucracy and local school boards could work. I, personally, still have that doubt.

. A few days after Community School Board 29 began this lawsuit, a bill was introduced in the New York State Senate (NY Senate Bill S 4348) to amend article 52-A of the Education Law. This proposed bill would not only give the Chancellor the power that he claims he has in Circular 37, but would also give him a veto power over the school board’s selection.