Thomas R. Jones, J.
In this article 78 proceeding the petitioner, the Parents Association of Public School 222 K, seeks an order: (1) directing the Community School Board of Local District 22 to remove an Acting Principal ‘ ‘ from any position whatsoever ” in Public School 222 K; (2) compelling the Community Board of Local District 22 to enter into ‘ ‘ meaningful consultation ’ ’ with the petitioner for the purpose of selecting an Acting Principal, and (3) granting petitioner “ a reasonable right to reject (proposed) candidates ’’for the position of Acting Principal.
This litigation arose because the Community School Board of Local District 22 appointed Charles Lerner as Acting Principal of Public School 222 K, over the objections of the Parents Association of the school. Lerner was appointed to serve as a temporary replacement for the retiring principal, whose terminal leave began on February 1, 1971. His interim designation will expire at the end of the current school year, in June, 1971. During Lerner’s brief term as Acting Principal the office of Principal is not deemed vacant, although he performs the functions of the Principal.
The petitioner contends that section 2590-d et seq. (Education Law, art. 52-A, L. 1969, ch. 330, as amd., popularly known as the Decentralization Law) does not permit the Community School Board to appoint an Acting Principal for P. S. 222 K unless it engages in prior consultation with the Parents Association of the school. The petitioner asserts that it has the right, ‘1 within reason ”, to reject a candidate proposed by the respondent for this post. The petitioner also claims that the appointment of Mr. Lerner, as Acting Principal was illegal, since the Community School Board failed to enter into a “meaningful discussion” with the petitioner prior to taking a decision in the matter.
The petitioner acknowledges that the Community School Board met with its representatives and discussed the Lerner appointment, but claims that the board had privately committed itself in advance to the Lerner appointment and did not seriously offer any other candidates for consideration. Finally, the petitioner complains that, only after its representatives had voiced objections to the lack of prior consultation, did the Community School Board arrange for interviews with other candidates and with the petitioner’s committee; and that following these interviews, without awaiting the ‘ ‘ official opinion ’ ’ of the petitioner, the respondent announced Mr. Lerner’s appointment as Acting Principal.
*23 The Parents Association claims that it was entitled to a consultative role in the selection of the acting principal, pursuant to letter and spirit of section 2590 et seq. of the Education Law as well as article XI, section 3 of the By-Laws of Community School Board 22.
The Community School Board maintains that it is not required to share with the petitioner its power to appoint and assign employees in School District 22 notwithstanding its own by-law which calls for prior consultation with petitioner prior to making such appointments. The board asserts that the Parents Association has no standing in law to bring this article 78 proceeding; and that the petitioner has failed to exhaust its available administrative remedies. The board takes the position that it has fully complied with all statutes and regulations governing the selection and assignment of Acting Principal Lerner, and that, in any event, in accordance with its by-laws it has voluntarily engaged in “ meaningful consultations ” with the petitioner concerning the Lerner appointment.
Parents’ associations have a long history of constructive contributions to the improvement of the New York City School System. For more than 50 years these voluntary organizations, singly and in united groups, have promoted the cause of quality education for millions of school children. Parents’ associations have consistently guarded the vital interests of families in the intellectual, moral and health education of their children in the public school. To guarantee that the views of parents would continue to be heard throughout the decentralized 31 districts of the school system, the Legislature required that each Community School Board adopt a by-law for the recognition of a parents’ association in every school within its district (Decentralization Law, § 2590-d, subd. [1]), in these words:
“ Each community school board shall adopt and may amend by-laws, including but not limited to the following requirements:
(1) that there shall be a parents’ association or a parent-teachers’ association in each school under its jurisdiction”.
To insure frequent meetings and serious dialogue between the new Community School Boards and the local parents’ associations, the Legislature directed that there be “ regular communication ” between them, and set the agenda of their meetings, in the following language (Decentralization Law, § 2590-d, subd. [2]): “ (2) * * * the board, the community superintendent and the principal of each school shall have regular communication with all parents’ associations and parent-teachers’ associations within the community district to the end *24 that such associations are provided with full factual information pertaining to matters of pupil achievement, including but not limited to: annual reading scores, comparison of the achievement of pupils in comparable grades and schools, as well as the record of achievement of the same children as they progress through the school; provided, however, that such record and scores shall not be disclosed in a manner which will identify individual pupils. ’ ’
Except for granting parents’ associations the right to have “ full factual information pertaining to matters of pupil achievement * * * reading scores * * * comparable grades and * * * record of achievement ”, the Legislature did not give parents’ associations any other status or rights in the decentralized school system. By specifying those particular concerns of parents’ associations which the Community School Boards were bound to respect, the Legislature limited the area and subjects of official discussion between them. Whether this was a wise or retrograde step on the part of the Legislature, only experience and political developments will disclose. This court has no power, however, to add any substance to the law. The Community School Board cannot be required to divide its statutory authority with the parents’ association, when it proceeds to: “ appoint, define the duties, assign, promote and discharge all * * * employees ”
(Education Law, § 2590-e, subd. 2). The law does not specifically or inferentially command that the Community School Board consult with any other group prior to appointing or assigning its employees. This court must therefore determine that the disputed appointment of Acting Principal Lerner, and the method by which he was designated, were not in violation of the statute. (See Valdivieso v. Community Board of Dist. One, N. Y. L. J., Nov. 9, 1970, p. 2, col. 3.)
The court is cognizant of article XI, section 3 of the Community School Board’s own by-laws by which this respondent undertakes to have consultation with the parents’ association of its schools “ prior to the selection, appointment and assignment of principals and assistant principals.” The appointment of an acting principal for a limited or temporary term does not violate this by-law. This court will not speculate on the legal result which would follow were the board to make a permanent or long-term appointment of a principal or acting principal and neglect to hold prior consultations with the parents’ association in accordance with its own by-law. It must be assumed that the Community School Board will comply with *25 the letter and spirit of its by-laws, in the interests of all concerned, especially the children of Public School 222 K.
The petitioner did not exhaust its administrative remedies or assert that such remedies were inadequate. Consequently, this proceeding is premature.
Subdivision 1 of section 25904 of the Education Law empowers the Chancellor of the city school district to issue orders to a Community Board directing that it “cease [any] improper conduct or to take required action ’ ’ and gives the Chancellor power to invoke appropriate sanctions (“ dismissal or removal of the community board ”) in the event of noncompliance with his orders (cf. § 2590-h). An appeal may be taken from the Chancellor’s order to the New York City Board of Education, acting as an appeals board, pursuant to subdivision 10 of section 2590-g of the said law. In addition, a further appeal may be taken to the Commissioner of Education from a final decision of the New York City Board of Education, pursuant to section 2590-g (subd. 10, par. [c]).
The petitioner has not availed itself of any of the foregoing procedural remedies designed to permit a review of disputed actions of Community School Boards, nor has petitioner offered to show that such administrative remedies are inadequate. Hence, this proceeding is premature.
Although petitioner’s view of its rights under the Decentralization Law and the Community Board’s by-law are not sustained by this court, nevertheless the parents’ association does have standing here to seek the construction and enforcement of the said law and by-law, For both section 2590-e of the Education Law and article XI, section 3 of the By-Laws of the Community School Board of Local School District 22 accord important and substantive rights to parents’ associations. Unfortunately, the respondent’s attorney has seen fit to offer a gratuitous insult to the petitioner, by writing that the parents’ association has no standing because ‘ ‘ it may be controlled by a handful of parents and hence responsible to a very few people ’ ’. Such remarks reflect ‘ ‘ the insolence of office ’ ’ and do not generate public respect for official conduct.
In view of foregoing determination, this court does not reach the question whether the Community School Board engaged in good faith consultation with the parents’ association, in conformity with the respondent’s by-laws, nor does the court pass on petitioner’s less tenable assertion that it had a “ reasonable right to reject candidates” proposed for the position of Acting Principal
The petition is dismissed.