Louis B. Heller, J.
New York City School Boards Association Inc. (hereinafter School Board Association) joined by various individual community school boards in this article 78 proceeding seeks to enjoin the implementation of certain provisions contained in a memorandum of agreement entered into by respondent Board of Education of the City of New York and United Federation of Teachers (hereafter Union) which would reduce the number of teacher preparation periods by mandating a shortened instructional day for the pupils of the elementary and junior high schools.
They also seek to enjoin the implementation of reallocation of formula funds for the programs and activities operated by the community school districts and seek injunctive relief invalidating respondent’s attempt to deny the community *239 school boards their right to adequate consultative procedures in collective bargaining negotiations.
The issue with respect to the excessing and layoff procedures by adopting a unitary seniority list was withdrawn by petitioners Efferson, et al.
These petitioners are joined in separate petitions by United Parents Association of New York City, et al, Parents Associations Presidents Executive Council, District No 8, Alliance for Children, Public Education Association, Parents Association, P. S. 75M, Parents Association, P. S. 52X, and Education Committee of Community School District No. 14 and named parents individually and as parents and legal guardians of minor children attending public schools in the City of New York and on behalf of all the parents of children similarly situated.
The various petitions are joined since there are identical questions of law and fact involved.
Respondent Board of Education of the City of New York joined by intervenor Union moves to dismiss the various petitions on the grounds that the petitions fail to state a cause of action and on the further ground that certain of the petitioners lack standing to sue.
The facts are not in dispute and have their genesis in the recent teachers’ strike and subsequent negotiations and settlement. Looming large in the background of this controversy is the menacing financial disaster of this great City of New York.
Briefly, the facts are as follows:
Early in September, 1975 collective bargaining negotiations between the Union and the Board of Education were stalemated and the schools were struck by the Union. However, the parties continued exhaustive and around-the-clock talks seeking a compromise solution to the impasse. The situation was charged with anxiety and frustration due to the financial difficulties that the city found itself in. An answer had to be found which would maintain the excellence of our educational system within the budgetary limits set by the City of New York. The dilemma which the parties found themselves in was not of their making, but must be recognized in order to understand the nature of the compromise entered into.
On September 15, 1975 the Union and the Board of Education entered into a memorandum of. agreement which settled *240 the strike. The focal issue in controversy concerns the provision of.the agreement which provides generally that teachers shall waive two of their preparation periods and that "two of their remaining preparation periods shall be scheduled during the periods when pupils have been dismissed in accordance with the shortened instructional day of pupils established by the Board” (art X of the memorandum of agreement). In other words, the instructional day for pupils will be shortened by two 45-minute periods a week.
Preparation periods are those periods in which a teacher has no class assignment but is expected to use in a manner which furthers his or her professional abilities. Preparation periods represent a significant item of expense since it requires that additional teachers be hired to provide class coverage for the time when a teacher is not assigned to a class. Any reduction in the number of preparatory periods would allow a saving in the sense that it provides millions of dollars worth of additional teacher time which could then be used to maintain reasonable class size at a time when thousands of teachers have been laid off. Significantly, the 1975-76 school budget represented a cut of $230,000,000 from the 1974-75 budget.
It was under these circumstances that the parties agreed to limit the number of preparatory periods previously allotted teachers by reducing the instructional day of the pupils.
On or about September 26, 1975 the Chancellor issued a directive requiring all community school boards to implement the provision of the agreement which would shorten the instructional day for pupils and reduce the number of preparatory periods previously allotted. Not all of the school districts have complied and some of those districts have responded by initiating the proceedings now before the court.
Initially petitioners moved for a preliminary restraining order seeking to enjoin the implementation of the directive by the Chancellor for a shortened school day. After extensive arguments the court denied the petitioners’ motion for a temporary stay and on appeal to the Appellate Division the appellate court refused to review their application.
Upon the subsequent argument on the merits of the motion all of the interested parties actively participated in the rather lengthy arguments, each side fully exploring its positions.
The issues involved in this proceeding are grave, delicate and complex and affect one of the most vital segments of our *241 society, namely, the proper functioning of the educational process. The court shares the concern of all the parties and recognizes the serious social, economic, educational and legal problems involved. However, the court is mindful of its own responsibilities and obligations under our constitutional form of government. Under our tri-parte system of checks and balances, it is the function of the court to interpret the law being ever so careful not to legislate nor interpose its personal feelings regarding the wisdom of those laws properly enacted.
Respondent Union, among other things, contends that none of the petitioners has standing to sue.
Respondent Board of Education likewise challenges petitioners’ standing to challenge the validity of city-wide policy adopted by the Board; however, it concedes that the community school boards do have the right to bring this proceeding.
The court concurs in the view that the only parties who have standing in this matter are the community school boards and their association.
Under the statutory scheme of school decentralization (Education Law, § 2590 et seq.) recognition and the functions of parents and parent-teachers associations were specifically spelled out. Section 2590-d of the Education Law requires that there be a parents association or parent-teachers association in each community school district and that the parent associations be provided "with full factual information pertaining to matters of pupil achievement * * * reading scores, comparison of the achievement * * * and record of achievement * * * and progress”.
In Parents Assn. of Public School 222K v Community School Bd. of Local School Dist. (66 Misc 2d 21, 24) my distinguished colleague, Mr. Justice Jones noted that "Except for granting parents’ associations the right to have 'full factual information pertaining to matters of pupil achievement’ * * * the Legislature did not give parents’ associations any other status or rights in the decentralized school system”. A reading of the Education Law supports the conclusion reached by Mr. Justice Jones. (See, also, Matter of Parent-Teachers Assn. of Samuel J. Tilden High School, 12 Ed Dept Rep 176.)
It is clear from a reading of the Education Law and the supporting cases that the Legislature did not intend to bestow upon parents associations or parent-teachers associations any direct authority over school policy except in the limited manner set forth in section 2590-d of the Education Law.
*242 The court is also of the opinion that neither the parents individually nor as parents of the children involved and others similarly situated have standing to bring this proceeding. The parents do not enjoy a general power of supervision over the school authorities. Complaints pertaining solely to matters within the administrative expertise of the educational officials involved are not justiciably cognizable (Matter of Oliver v Donovan, 32 AD2d 1036). For the courts to entertain parental or individual complaints it must be shown that there is a continuing or threatened injury to the interests of the child in particular (Matter of Shanks v Donovan, 32 AD2d 1037; for a similar result in a different case on a different subject see Matter of Abrams v New York City Tr. Auth., 48 AD2d 69).
The conclusory assertions of the parents do not establish the particular, personal, real, direct or substantial interests necessary to confer standing to challenge the board’s action and therefore lack standing in these proceedings.
Thus, the petitions of the United Parents Association et al., Parents Associations Presidents Executive Council, District No. 8, Alliance for Children, Public Education Association, Parents Association, P. S. 75M, Parents Association, P. S. 52X, and Education Committee of Community School District No. 14, and the individual parents are dismissed. Even if the court would entertain their petitions it would dismiss them on the merits for the reasons hereinafter stated.
The paramount issue involved herein is whether or not the central Board of Education possessed the power to shorten the instructional day of the pupils by two 45-minute periods per week and if it did have that power, whether their action was a legitimate exercise of that power.
Specifically, the Community School Boards contend that the shortened school day is a question of policy which is not a proper subject of collective bargaining under the Taylor Law (Civil Service Law, art 14); that public employees negotiating rights are limited to determination of terms and other conditions of employment (Civil Service Law, §§ 203, 204), such as salaries, wages and hours and that adjusting the length of the school day is not such a condition of employment to come within the sanction of the statute; and that respondents’ action in this regard was violative of the expressed statutory provisions of the Taylor law requiring the injunctive relief requested.
In the alternative, petitioners argue that even if it were *243 assumed, arguendo, that the Taylor law does not prohibit inclusion of the contested provision in a binding collective bargaining agreement, the decentralization law would preclude a subtle conspiracy by the union and the City Board to undermine the specific statutory powers of the Community Boards; and that instructional powers, including the length of the school day, are vested by law in the community school boards and, as such, they cannot be taken away from the community boards by other governmental agencies.
At the outset, it should be noted there is no statute regulating the length of the school day. The only legal requirement concerns the length of the school year; subdivision 2 of section 1704 of the Education Law mandates that schools must be in session for a minimum of 180 days. The only reference with respect to the length of the school day is to be found in the bylaws of the board of education (see By-Laws of the Board of Education, §§ 77, 78, 82). Clearly, the action by the city board in this matter was not in violation of law.
The court is convinced that the decision to shorten the school day was a matter of educational policy within the discretionary power of the city board and, as such, susceptible of independent action by the employer board of education (see Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 48).
The decision to shorten the school day was a policy consideration made necessary in order to compromise the teachers’ demand to retain some of the preparation periods which were provided in previous contracts. The language of the provision in issue clearly spells out the compromise arrived at by the parties. The memorandum of agreement does not provide for or require a shorter or longer instructional day; it merely refers to the consequences in regard to the preparation periods which would result from a decision by the board to have a shorter or longer day. The decision to shorten the instructional day was considered in relation to the fiscal restraints, budgetary considerations, class size and other educational and economic factors which cut across all of the community districts and therefore within the expertise of the city board.
Thus, the court holds that the policy decision with respect to the length of the school day is the proper function of the city board and not the prerogative of the community boards.
The community school boards contend that under decentralization they were entrusted with broad, general powers over *244 the everyday workings of the schools under their charge, including the power in controversy herein.
This contention by petitioners has no basis in law or in fact.
It is patently obvious that under the statutory structure of the decentralization law, educational issues of city-wide import, as distinguished from strictly local questions, are to be determined by the city board.
Section 2590-g of the Education Law provides that it shall be the prerogative of the city board to, "determine all policies of the city district.” Section 2590-h directs the chancellor to "exercise all his powers * * * in a manner not inconsistent with the policies of the city board.” Section 2590-e which defines the powers and duties of the boards of education of community school districts, provides that the powers devolved upon community school boards shall be exercised in a manner "not inconsistent with * * * the policies established by the city board”.
Thus, it is clear that the city boards may promulgate and enforce as against the various community boards its basic policies in matters transcending district boundaries as in the case at bar. Such primacy has previously been recognized in such areas as alleviation of racial imbalance (Matter of Kryger v Board of Educ., 37 AD2d 622; formula of city-wide assessing policies, Matter of Community School Bd. No. 3, 11 Ed Dept Rep 154; Regulation of Excess Patterns in the High Schools; Matter of Community School Bd. No. 6, 12 Ed Dept Rep 164; and Interpretation of Obligations under a Collective Bargaining Agreement, Matter of Community School Bd. No. 6,13 Ed Dept Rep 47).
In the Kryger case (supra) the Appellate Division made the following observation, "Section 2590-e of the Education Law limits the powers of the Community School Board to those matters relating to its district. It is inconceivable that the Legislature intended that one Community School Board could unilaterally make a determination which would materially affect another Community School District.”
It is equally inconceivable that the decision with respect to the length of the school day should be relegated to the individual community school board. Under such a setup it would be possible for every school district to have different hours of instruction. The incongruity of such a result is readily apparent. The difficulty of such a situation was recog *245 nized by petitioners during oral argument. Thus, after the attorney for the community school boards stated that his clients have the power to fix the length of the school day, the ensuing colloquy took place, which graphically illustrates the weakness of the community board position in this regard:
"the court: All right. Under paragraph 12 and 13 in your petition it is stated that the Community School Boards are vested with the power to fix the number of instructional periods for the children under their jurisdiction. Is that correct:
"mr. rebell: Yes.
"the court: Now, let’s carry this thought to some sort of an ultimate conclusion, if possible. I have to understand, then, that each Community School Board would fix its own hours of instruction? Is that correct?
"mr. rebell: Well, your Honor—
"the court: It wouldn’t be uniform under those circumstances? It is conceivable?
"mr. rebell: It is conceivable. We are not taking a position on the parents’ point that state law binds them to five hours.
"the court: It is conceivable that if you go through the thinking the way you want me to think that each board could have different hours of instruction? Is that correct?
"mr. rebell: It is conceivable, yes.”
The case of Reyes v Community School Bd. No. 14 (NYLJ, June 24, 1971, p 14, col 8) cited by petitioners, actually supports the position taken by the respondents and does not mandate a different result.
The language of the court in the Reyes case (supra) to the effect that the limitation of the powers of the community boards found in section 2590-e of the Education Law affect only those powers enumerated therein, must be considered in light of the subsequent remarks of the court:
"Section 2590-g empowers the Board of Education to determine the policies for the entire city school system. Without these uniform standards, and leaving each community board to act on its own, the administration of the city system of education could become most difficult and even virtually impossible. * * *
"To prevent such inequities and the resulting detriment to the school system, it is necessary that all of the Community *246 Boards in the city act in accordance with a set policy which binds them all.”
Thus, it has been sufficiently established that shortening of the school day represents an issue of uniform policy and therefore community boards must defer to the city board in this regard.
It may also be argued that the question of teacher preparation periods was the only item on the table during the negotiation sessions between the union and the board. The language of article 10 of the memorandum of agreement supports this view. Thus, under the terms of that provision the teachers waived two of their preparation periods and "two of the remaining preparation periods shall be scheduled during the two periods when pupils have been dismissed in accordance with the shortened instructional day for pupils established by the Board. ” (Emphasis supplied.)
In other words, the parties compromised the number of preparation periods, which was to be accomplished by a policy decision of the board to shorten the instructional day. There can be no argument with the proposition that under these circumstances the preparation periods were a viable condition of employment which were negotiable and binding on the community boards (Board of Educ. v Associated Teachers of Huntington, 30 NY2d 122; Council of Supervisors v Board of Educ., 73 Misc 2d 783, affd 42 AD2d 930; Community School Dist. No. 5 of City of N.Y. v Board of Educ, NYLJ, Nov 12, 1975, p 8, col 1).
Contrary to petitioners’ assertions, the memorandum of agreement represents the accord of the parties and constitutes a legally viable instrument, binding upon the parties.
Petitioners have not shown nor has the court found any mandatory provision which requires the board of education to conduct a public meeting prior to proclaiming a statement of educational policy; any contrary holding would be impracticable.
Petitioners’ contention that it was not afforded consultation in compliance with subdivision 6 of section 2590-g of the Education Law is without merit. The affidavit of Robert Christen, vice-president of the board of education and head of the board’s negotiating team at the collective bargaining session, dispels any contention that petitioners were not properly consulted during the negotiations.
*247 The court is also convinced that respondents did not act illegally or improperly in the reallocation of funds for the community school districts. These funds were initially allocated pursuant to a complicated formula under subdivision 7 of section 2590-i of the Education Law. However, because of the drastic changes in the amount of money allocated, the number of personnel involved and other pertinent factors, it became necessary for the board to subsequently readjust those figures and to reallocate the amount of funds previously determined in each of the districts. The formula was not changed but the conditions which aifected the formula were changed. The action by the city boards was not arbitrary or capricious in any manner.
Thus, the court finds that the petitioners, community school boards, have not sufficiently established a cause of action for injunction.
The motion by respondents to dismiss the petition of the community school boards and their association, is likewise granted and the petition dismissed in all respects, on the ground that there is failure to state a cause of action.