Myrna R. ZOLL, as Guardian of Amy and David, et al., Plaintiffs,

v.

Chancellor Irving ANKER, Chancellor of the City District, et al., Defendants.

No. 76 Civil 1716.

United States District Court,
S. D. New York.

May 20, 1976.

Alexander Peltz, New York City, for plaintiffs; Joseph B. Hudson, Jr., New York City, of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for defendants Anker, City Board and Mathew; Doron Gopstein, Asst. Corp. Counsel, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This action challenges again the directive of the New York City Board of Education ("City Board") to the Community School Board of District No. 3 ("Local Board") that the school day on Mondays and Fridays be shortened by forty-five minutes in all public schools throughout the city. The power of the City Board to lower the hours of instruction in the New York City public school system was recently upheld by the New York Court of Appeals,[1] but plaintiffs, parents of children attending P.S. 75 in District 3, argue that the claims advanced here were not resolved in the state action. They commenced this action under the Civil Rights Act,[2] alleging violations of the due process and equal protection provisions of the Fifth and Fourteenth Amendments. They now move for a preliminary injunction restraining the City Board from enforcing its directive and from superseding the Local Board, which has refused to comply with the directive.

The details of this controversy are set forth in Justice Heller's opinion in *In re New York City School Boards Association, Inc. v. Board of Education*[3] and need not be recited here. It is pertinent to note, how-

1. *In re New York City School Bds. Ass'n, Inc. v. Board of Educ.*, 39 N.Y.2d 111, 383 N.Y.S.2d 208, 347 N.E.2d 568 (March 25, 1976).

2. 42 U.S.C. §§ 1981, 1983.

3. 84 Misc.2d 237, 375 N.Y.S.2d 978 (Sup.Ct., Kings Co. 1975), *modified*, 50 A.D.2d 826, 376 N.Y.S.2d 194 (2d Dep't 1975), *aff'd* 39 N.Y.2d 111, 383 N.Y.S.2d 208, 347 N.E.2d 568 (March 25, 1976).

ever, that the City Board adopted a shortened school day ancillary to an agreement with the United Federation of Teachers that settled a teachers' strike in New York City in September 1975. The teachers agreed to a reduction in the number of preparation periods to which they were previously entitled, with the understanding that two of their remaining preparation periods would be scheduled during the period when students were to be dismissed under the City Board's shortened school day program. The City, at that time beset on all sides by grave financial problems, benefited substantially from the reduction in preparation periods.[4]

The initial challenge in the state courts to the City Board's authority to shorten the school day by forty-five minutes was a consolidated Article 78 proceeding. Various community school boards, parents and parents' associations contended that the City Board had usurped the functions delegated to the community boards under New York City's school district decentralization law.[5] The City Board prevailed in the lower courts and in the Court of Appeals, where Judge Breitel held:

"[T]he central city board of education has the power to establish, consistent with minimum educational standards, a uniform citywide policy or standard with respect to the hours of instruction in the public schools. Confronted with the city's grave fiscal crisis and an unlawful teachers' strike, the central board acted to reduce expenditures throughout the school system by shortening the hours of instruction by two forty-five-minute periods per week. Because this action falls within the central board's powers to es-

tablish standards and policies, to bargain collectively with all the city teachers, and to supervise the overall city educational budget, it was not violative of the statutes providing for school district decentralization in the City of New York."[6]

This ruling by New York's highest court was binding on these plaintiffs, who were parties to the state court proceeding.[7]

On March 31, 1976, six days after the State Court of Appeals' decision, the Local Board, in disregard of the ruling and in violation of the City Board policy, directed that schools in District 3 remain open for the full school day. Soon thereafter, Irving Anker, Chancellor of the City Board, attempted to conciliate the matter and reach an accommodation with members of the Local Board, but was rebuffed and his efforts met with disorder on the part of the parents.[8] Thereupon Chancellor Anker superseded the Local Board on April 8, 1976 for its violation of the City Board policy and appointed a trustee to ensure compliance with the directive of the City Board.[9] The trustee's efforts to enforce the directive were frustrated by the parents in District 3, who blocked entrances to the schools by the trustee's representatives, refused to relay telephone messages to the principals, occupied the schools in some cases, and in some instances locked the principals out of the schools. The result of these actions, according to the affidavits of the plaintiff-parents, is a "potentially traumatic" state of affairs, with P.S. 75 and other schools in District 3 "in constant turmoil and chaos."

 Viewed against this background, the issue is whether plaintiffs on this mo-

---

4. 375 N.Y.S.2d at 982.

5. N.Y.Educ.Law §§ 2590–2590–n.

6. 39 N.Y.2d at 115, 383 N.Y.S.2d at 211, 347 N.E.2d at 571 (1976).

7. Among the petitioners in the state court were the Parents Association of P.S. 75 and various parents, including one named as a plaintiff in the instant complaint, suing on behalf of all the parents of children similarly situated. The standing of the various parents and parents' associations in the state court proceeding was

explicitly upheld by the Appellate Division. 376 N.Y.S.2d at 196.

8. Chancellor Anker's version of events describing a crowd of shouting and jeering individuals is not disputed. Neither is it denied that when he and members of his staff left the meeting with the Local Board they were jostled by parents and their automobile was hit and shaken.

9. See N.Y.Educ.Law § 2590–*l* [1](a).

tion for preliminary relief have made a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardship tipping decidedly in their favor.[10] Plaintiffs' first contention is that the City Board promulgated its directive without holding public hearings or consulting with the community board, and that this violated sections 2590–g[4] and [6] of New York's Education Law. But the New York Supreme Court held against plaintiffs on this very issue in the Article 78 proceeding to which they were parties. The court stated:

> "Petitioners have not shown nor has the court found any mandatory provision which requires the Board of Education to conduct a public meeting prior to proclaiming a statement of educational policy; any contrary holding would be impracticable.

> "Petitioners' contention that [they were] not afforded consultation in compliance with section 2590–g, subd. 6 of the Education Law is without merit. The affidavit of Robert Christen, Vice President of the Board of Education and head of the Board's negotiating team at the collective bargaining session, dispels any contention that petitioners were not properly consulted during the negotiations."[11]

Plaintiffs' attempt to relitigate this state law issue before a federal forum is barred by the doctrine of res judicata.[12] Their labored effort to transform the claim into an issue of federal procedural due process is equally without merit. Thus, plaintiffs argue that "it is reasonable to characterize the mechanisms which the State of New York has provided for decision-making regarding a most important value of free society as a due process. When the State therefore, through its creatures, the City Board of Education and Chancellor, denies to its citizens and its elected representatives, the mechanisms provided by law—public hearings and consultations—then plaintiffs' right to procedural due process has been violated." The short answer is that it has been conclusively determined that plaintiffs were not denied any of their rights under state law.[13] In this circumstance, there is no basis for this constitutional claim of denial of due process.

Plaintiffs make a further claim that, independent of any state statute, they or their children were entitled at a minimum to notice and a hearing prior to any shortening of the school day. Supposedly, the loss of forty-five minutes of instruction on Mondays and Fridays deprived the children of a "right to enjoy a full education," and triggered the protections of the due process clause.

■ Since education is not a fundamental right under the Federal Constitution,[14] plaintiffs, to succeed upon the federal constitutional claims, must establish that they acquired a protected property interest which the state conferred or intended to

**10.** See, e. g., Merrit v. Libby, McNeill & Libby, 533 F.2d 1310 (2d Cir. 1976); Gresham v. Chambers, 501 F.2d 687, 691 (2d Cir. 1974); Sonesta Int'l Hotels Corp. v. Wellington Assoc., 483 F.2d 247 (2d Cir. 1974).

**11.** 375 N.Y.S.2d at 987–88.

**12.** Plaintiffs' suggestion that the Christen affidavit, submitted to the New York Supreme Court, "can and will be refuted" points up sharply the extent to which plaintiffs seek a "second bite at the cherry." The veracity of the affidavit was quite obviously a matter to be tested by the court to which it was submitted.

**13.** Of course, this is not to suggest that, even had there been a violation of state law, the

violation would necessarily have had constitutional significance.

**14.** San Antonio Indep. School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Even if "some identifiable quantum" of education is guaranteed directly under the Federal Constitution, there is "no basis for finding an interference with fundamental rights where only relative differences in spending levels are involved and where—as is true in the present case—no charge fairly could be made that the system fails to provide each child with an opportunity to acquire the basic minimal skills necessary for the enjoyment of the rights of speech and of full participation in the political process." Id. at 36–37, 93 S.Ct. at 1299.

confer.[15] New York has indeed conferred a right or entitlement to public education upon its resident pupils.[16] However, it does not follow that a deprivation of that right occurs whenever the school day is shortened or the curriculum changed. By shortening the school day on Mondays and Fridays for forty-five minutes the state has not significantly curtailed a student's right to an education under its laws any more than when a faculty votes to change classroom hours into study hall hours, or to teach "new math" rather than "old math," or to require attendance at an assembly hall. To hold that such decisions deprive students of "property" interests would vitiate the state's acknowledged "power to prescribe the school curriculum,"[17] and hamper its ability to adapt its educational program to meet changed circumstances and to reflect new ideas. Common sense alone indicates that "the right to enjoy a full education" is defined by contours more broad than the number of minutes in a school day. Apart from this, the New York courts have determined that the shortening of the school day by forty-five minutes does not violate any current state statute, Board of Regents regulation or Board of Education by-law.[18] That determination, of course, binds this court, and it follows that the City Board's directive did not deprive plaintiffs' children of any entitlement owed them under state law.

■ The balance of plaintiffs' federal constitutional claims are equally without merit. First, plaintiffs contend that the Chancellor's supersession of the Local Board violates their right of franchise—in sum, they argue that, since the voters elected the members of the Local Board, the Chancellor's supersession was a "*de facto* nullification" of the right to vote. However, apart from plaintiffs' failure to plead this theory or even to allege that they were voters, the right to franchise does not immunize improper conduct by elected officials or require their continuance in office. The state law which confers upon plaintiffs the right to vote for the members of their local school board[19] also provides for the supersession of local board members who resist lawful directives of the Central Board.[20] Plaintiffs' right to vote was not "nullified" any more than when a district attorney, elected by the community at large, is superseded or even removed by the Governor.[21]

■ The final claim is that plaintiffs are denied equal protection of the laws because only New York City children have had their school day shortened and because the shortened school day allegedly serves no rational purpose as applied to District 3. But the court is unaware of any requirement that all of the students in the state be offered the same number of courses or hours of instruction. The New York Court of Appeals has observed that "the number of hours of class teaching is not solely a matter of instruction policy. It is also a function of budgetary considerations and also a term or condition of teacher employment."[22] The Supreme Court has counselled the judiciary to "refrain from imposing on the States inflexible constitutional restraints" in matters of fiscal and

15. *Goss v. Lopez*, 419 U.S. 565, 572–73, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). *Cf. Child v. Beame*, 412 F.Supp. 593, 605 (S.D.N.Y., Feb. 20, 1976) ("For plaintiffs to acquire the right contended for, so that it is a protected 'property' interest under the Fourteenth Amendment, it must appear that the state intended to confer that right.")

16. *See* N.Y.Const. Art. 11, § 1; N.Y.Educ.Law § 3202[1]. *Cf. Goss v. Lopez*, 419 U.S. 565, 573–74, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

17. *Epperson v. Arkansas*, 393 U.S. 97, 105, 89 S.Ct. 266, 271, 21 L.Ed.2d 228 (1968).

18. *See In re New York City School Bds. Ass'n v. Board of Educ.*, 375 N.Y.S.2d at 984; 39 N.Y.2d at 115, 383 N.Y.S.2d 211, 347 N.E.2d 571.

19. N.Y.Educ.Law § 2590–c[3].

20. N.Y.Educ.Law § 2590–*l*.

21. *See* N.Y.Const. Art. 13, § 13(b); N.Y. Exec.Law § 63[2].

22. 39 N.Y.2d at 120, 383 N.Y.S.2d 213, 347 N.E.2d 574.

educational policy.[23] Thus, since the City Board was caught between the crossfire of the demands of the teachers' union and the financial plight of the city, which severely restricted its capacity to meet all the demands of the teachers, the Board's decision was a rational solution to the problem and it did not work an "invidious discrimination" between City schoolchildren and those residing elsewhere.

Plaintiffs' related claim—that the City Board's directive is arbitrary and capricious as applied to District 3 because District 3 is able to have a full day and still come within its budget, and because the directive ignores the interests of the children of that District and seeks only "to insure that the Teachers Union is placated" —also fails. It is the City Board that is vested with power to determine citywide educational policy applicable to all local boards; it is the City Board which has the power to enter into collective bargaining agreements with the union, the terms of which are binding upon all local school boards. The City Board acted within the sphere of its responsibility in both areas— citywide educational policy and citywide labor relations. While parents may disagree and sincerely challenge the wisdom of the policy decisions, the responsibility was that of the City Board. Under the circumstances, it was not irrational for the City Board to refuse to make an exception in the instance of a local board that was of the view that it could finance a full school day.

In sum, plaintiffs have made no showing of probable success on any of their claims, nor of the existence of serious questions going to the merits. In view of the equitable nature of the relief they seek, however, a further word is appropriate. On the record before the court, plaintiffs' complaint of turmoil and chaos in the schools results not from any action of the defendants but from the actions of the parents themselves. Far from creating a basis for equitable intervention, their conduct furnishes a compelling reason to deny it.

The motion for a preliminary injunction is denied.

**23.** *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 40–43, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).