Michael SCOTT, a minor by his parent and natural guardian Genevieve Scott, et al., Plaintiffs,

v.

BOARD OF EDUCATION OF the CITY OF NEW YORK et al., Defendants.

No. 76 Civ. 4256 (CHT).

United States District Court, S. D. New York.

Oct. 4, 1976.

Harlem Assertion of Rights, Inc. by James N. Finney, Alton H. Maddox, Jr., New York City, for plaintiffs.

W. Bernard Richland, Corp. Counsel of the City of New York by Eileen Shapiro, New York City, for defendants.

## MEMORANDUM

TENNEY, District Judge.

Plaintiffs have moved the Court for a preliminary injunction prohibiting defendants from closing JHS 120, a public junior high school in Manhattan. For the reasons stated below, the motion is denied.

Plaintiffs are seven in number—three students said to attend PS 79, the parents of these students, and the President of the Parents Association of JHS 120. In their complaint they allege that on April 26, 1976 the Chancellor of the Board of Education of the City of New York ordered the closing of JHS 120. Such action, they maintain, violated their rights under the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution in that it (1) "compelled and still compels plaintiffs minors to receive an education which falls short of that required under State Law," (2) was designed to and had the result of discriminating against black students, (3) was accomplished without the consultation with the school's parents association as required by state law, and (4) was outside the statutory authority of the Chancellor. Plaintiffs also allege that the failure of the local board to formulate a "zoning plan" in consultation with the parents association violated their fourteenth amendment rights.

The fiscal crisis of New York City is well known. One of its unhappy concomitants has been a serious reduction in the funds available for the city's public school system. In order to live within these financial constraints, the Board of Education has ordered the closing of certain underutilized schools. The Board authorized the Chancellor to review the utilization of school buildings in cooperation with Community School Boards and affected parent groups. As early as June of 1975 it was brought to the attention of Community School Board No. 5 ("CSB 5"), located in Central Harlem, that two of its schools, PS 79 and JHS 120, were underutilized and that shifts in the student populations of those schools should be considered.[1] In January of 1976, the School Utilization Committee of CSB 5 recommended the consolidation of PS 79 and JHS 120 into one school to be housed in either of the school buildings. In further evaluation of this proposal, the Building Review Committee of the citywide Board of Education, which included among its 15 members a member of CSB 5, met with the Parents Association of PS 79 on March 31, 1976, and with the Parents Association of JHS 120 on March 31 and April 6, 1976. On April 26, 1976, the Chancellor ordered the JHS 120 building closed by June 30, 1976. That decision was appealed by CSB 5, and an Appeals Board affirmed the decision of the Chancellor on June 25, 1976.

Subsequently, the local board was mandated to prepare a zoning plan which would provide for the transfer of JHS 120's students to other schools in the area. It appears from the papers submitted to the Court that no such plan was developed and that the local board has continued to attempt to keep JHS 120 open. When school resumed on September 13, 1976, JHS 120 appears to have been reopened and continued so at least through the end of September.

■ The burden is on the plaintiffs on this motion for a preliminary injunction to make a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in their favor. *Merrit v. Libby, McNeill & Libby,* 533 F.2d 1310, 1311 (2d Cir. 1976).

■ A close examination of plaintiffs' claims reveals all but one of them to depend essentially upon allegations of state law violations rather than upon infringement of constitutional rights. Three claims allege that mandated state procedures were not followed by the defendants in closing JHS 120. A fourth states that the student plaintiffs are not receiving the education required by state law. In exploring the centrality of state law with counsel during oral argument, the Court learned that one of the

---

1. Statistics produced by the defendants show that 665 students attended JHS 120 last year, only 44% of the school's capacity of 1,515 students. PS 79 had 350 students, or 30% of the capacity of 1,136. Within the boundaries of CSB 5 a new school, I.S. 195, was scheduled to open in September of this year. If JHS 120 were kept open, the underutilization of the district's intermediary schools would be severe.

plaintiffs in this action, Delores Green, President of the Parents Association of JHS 120, had indeed brought a previous state action, under Article 78 of the CPLR, against the same defendants, challenging the closing of JHS 120 and requesting virtually identical relief to that requested herein. That action has now been decided adversely to plaintiff Green, *In re Green,* Index No. 13377/76 (Sup.Ct., Kings Co., Sept. 24, 1976) and, insofar as her claims are based on state law, is res judicata as to her. *See Zoll v. Anker,* 414 F.Supp. 1024, 1027 (S.D.N.Y.1976). Furthermore, although the rules of res judicata prevent the application of the state court decision as a bar to the other plaintiffs in this case, this Court finds that the resolution of issues of state law in the Article 78 action to be definitive of that law for purposes of this action. Thus, it must be concluded that all procedures required by state law were followed in the closing of JHS 120 and that this action was fully within the authority of the Chancellor. *In re Green,* Memorandum Opinion at 3. Furthermore, this Court accepts the state court's ruling that the closing was "neither arbitrary nor capricious" and rested upon "a rational basis." *Id.* at 2. Insofar as plaintiffs' claims are based upon violations of state law, those claims are wholly without merit.

■ Plaintiffs' attempts to transform their claims into constitutional challenges also fail to establish the "probable success on the merits" or the "sufficiently serious questions" required for the granting of a preliminary injunction. Since education is not a fundamental right under the Constitution, *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 35–39, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the finding that the closing of the school was supported by a rational process of evaluation mandated by the unavoidable realities of a budgetary crisis disposes of any equal protection challenge based on the right to education. *See id.* at 40, 93 S.Ct. 1278. The plaintiffs' contention that their rights under the due process clause of the fourteenth amendment were violated cannot stand in view of the lengthy and protracted consultations, letters and meetings which the record reveals to have characterized the decision-making process here. Both notice and opportunity to be heard, the twin tenets of procedural due process, seem to have been abundantly satisfied in the closing of JHS 120. *See Goldberg v. Kelly,* 397 U.S. 254, 266–71, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

■ Finally, plaintiffs have alleged that the closing of the school had the purpose and effect of discriminating against black students. In a civil rights action, however, a mere allegation of the infringement of constitutional rights will not suffice without the presentation of at least some facts which would tend to support those allegations. *Moore v. Kibbee,* 381 F.Supp. 834, 838 (E.D.N.Y.1974); *see Campbell v. Patterson,* 377 F.Supp. 71, 73 (S.D.N.Y.1974). Here, plaintiffs must show that the school closings have had a greater effect on black students than on other student groups. On the papers submitted to the Court on this motion, however, no such facts can be discerned. Rather, it would seem that a great many schools were closed by action of the Chancellor and that those decisions were based not on racial criteria but on the cold facts of utilization percentages and relative costs of maintenance.

In addition to their inability to demonstrate probable success on the merits of their claims, plaintiffs have also failed to show irreparable injury. The complaint seems to state, and the other papers seem to agree, that JHS 120 was still open as of the end of September. If this is true, then none of the plaintiffs are being injured by the closing of the school. Indeed, the case may not even be ripe for decision.

It appears from the record and from the decision of the state court that the recent performance of the students and staff of JHS 120 has been admirable. It also appears, however, that the defendants understood and sympathized with the situation of JHS 120 and made a concerted effort to retain its excellence while coming to grips with unavoidable budgetary and logistical problems. It cannot be said on the record

now before this Court that these efforts violated constitutional rights.

For the reasons discussed above, the plaintiffs' motion for a preliminary injunction is denied.

So ordered.